FREEMAN C. EDMAISTON, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 452 S.W.2d 677.

Court of Criminal Appeals of Tennessee. Jan. 9, 1970.

Certiorari Denied by Supreme Court March 16, 1970.

Hugh W. Stanton, Jr., Memphis, for plaintiff in error.

David M. Pack, Atty, Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, for defendant in error.

## OPINION

MITCHELL, Judge.

Freeman C. Edmaiston the defendant below was indicted by Shelby County Grand Jury June 11, 1968, on a charge of robbery of J. T. Etheridge alleged to have been committed March —, 1960. He was tried January 13, 1969, found guilty of robbery, a sentence of not more than ten years in the penitentiary was fixed by the jury. Judgment and sentence were pronounced by the Court for not more than ten years in the penitentiary. Motion for a new trial was heard and overruled and the defendant appealed to this Court.

The defendant was represented in the trial of the case by privately retained counsel. On the same date the motion for a new trial was overruled the Court determined defendant was indigent and appointed the Public Defender as counsel for him.

According to the testimony of State's witness, J. T. Etheridge, who was at that time employed by Jim's Liquor Store in Memphis, was held up and robbed of about $651.00, March 14, 1960, about 10:45 p.m. Mr. Etheridge identified the defendant Freeman C. Edmaiston

as the man who robbed him. Etheridge did not see any weapon but was in fear of his life. Mr. Etheridge reported the incident to the police, described the robber, and the next night after the robbery, from about one hundred pictures which the police showed him, he identified the defendant.

On cross examination, Etheridge testified he knew the defendant and that the eight years intervening between date of the offense and the date of the trial his memory had not failed too much.

Mrs. Marie Shamlin, who was employed at the Ranch House Restaurant diagonally across the corner from Jim's Liquor Store, on the evening Jim's Liquor Store was robbed, stated three persons came into her place about 9:00 p.m. and that one of them was the defendant and another of the three whom she knew was Roy Edmaiston a brother of defendant, a small dark headed girl about sixteen was with them. They ordered supper. The little girl said she did not want to eat, Freeman Edmaiston said, "You are going to eat so order." Freeman Edmaiston addressed Mrs. Shamlin and said, "I was thinking about a date with you." Roy said, "I don't guess your husband would like that." Freeman said, "Well if you are married forget it." They stayed there till about 10:15 p.m. Freeman was drinking.

Lt. N. G. Sigmon of the Memphis Police Department testified he made affidavit and obtained a warrant for the defendant on March 21, 1960, charging him with robbery of Mr. Etheridge at Jim's Liquor Store. Warrant is filed as Ex. 1. He was not able to arrest the defendant in Memphis. Freeman C. Edmaiston was not within the State of Tennessee from April, 1960, to June 3, 1968; he was in Illinois.

James N. Willis, Detective with the Memphis Police Department testified he returned Freeman C. Edmaiston from Menard, Illinois. Detective Willis advised him of his rights as required by the Miranda decision.

The defendant made a free, voluntary statement that he was drinking on the night of this incident and really did not remember too much about that night. The next morning he woke up at his aunt's house when he had this money. He had raised a little cain around his aunt's house, she told him to get out and he got his brother to drive him to Illinois.

The defendant testified in his own behalf. He is thirty-eight years old that he made parole in Illinois from the penitentiary that he had eleven years to back up. He testified he did not once discuss a liquor store hold up with Detective Willis or Caesar. That he'd never seen this woman (probably referring to Mrs. Shamlin, State witness) before, had never seen the man that owned the liquor store. He had been drinking and did not know if he'd been in the liquor store or not. He had seen it. He is an alcoholic, been an alcoholic all his life until 1963, he has been going to A.A. for five years. His witnesses John and Dorothy Albright, whom he testified he wanted present in Court if possible, were killed in a bus wreck in 1965. That's his niece's husband's twin brother-in-law and wife. To his knowledge, he denied being involved in the liquor store robbery.

On cross examination, defendant admitted he was convicted of attempted robbery in Shelby County, February 28, 1949, convicted of three different counts of robbery in Chicago, Illinois, November 10, 1949, and sent to Joliet, Illinois, penitentiary. He was convicted May 10 and May 12, 1955, of grand larceny in Shelby County

and sentenced to the penitentiary at Nashville. He was convicted at Kankakee, Illinois, of robbery March 20, 1960.

On further cross examination the defendant, when asked if he denied robbing Mr. Etheridge answered, "To my knowledge, I've never seen this man before in my life. I'm denying it. I've never seen that man before in my life, so I've got to be denying I robbed him. I don't know where I was." He said he did not know whether or not he was in Memphis, Tennessee, on March 14, 1960. When he waked up the next morning he had $210.00, he did not know where he got it. His brother took him to Joliet, Illinois.

■ ■ The defendant's assignments of error II and III challenge the sufficiency of the evidence and will be considered together, in the light of the well-established rule in Tennessee that the verdict of the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory. The verdict removes the presumption of innocence and raises the presumption of guilt, thereby placing upon the defendant the burden of showing the evidence preponderates against the verdict. Holt v. State, 210 Tenn. 188, 357 S.W.2d 57; Bolin v. State, 219 Tenn. 4, 405 S.W.2d 768; Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107.

■ We are bound by the rule that a conviction in a criminal case will not be reversed on the facts unless it is shown by the defendant that the evidence preponderates against the verdict and in favor of his innocence. White v. State, 210 Tenn. 78, 365 S.W.2d 411.

The trial judge and jury saw the witnesses face to face,

heard them testify, and observed their demeanor on the stand, and they were in much better position than we are to determine the weight to be given to their testimony. Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523.

■ The evidence does not preponderate against the verdict.

Assignments of error I and IV raise the question of the denial of the defendant's right to a speedy trial during the eight years he was in prison in Illinois.

Defendant avers in the motion to quash the indictment that during the period 1960 to 1968 he was serving a sentence in the Illinois State Penitentiary and available for trial by the Courts of Tennessee and that Tennessee authorities made no good faith effort to have him brought back to trial.

Defendant also avers in his motion to quash that on April 6, 1966, he filed a petition in the Criminal Court of Shelby County that the warrant be dismissed for failure to prosecute.

In denying the motion to quash the trial court found the defendant had several times attempted to have a speedy trial during the time he was in prison in Illinois but did not show the dates of defendant's efforts to obtain a speedy trial. Defendant contends that two alibi witnesses died in a bus wreck in 1965 and that he has been prejudiced by denial of a speedy trial.

The Supreme Court decision in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, was handed down January 20, 1969, which requires states to make a good faith effort to bring back for trial persons who may have been indicted for crimes, and are serving sentences in another State or Federal prison.

The defendant Freeman C. Edmaiston was returned to Tennessee June 3, 1968. Indictment made June 11, 1968. Case was tried January 13, 1969. Hooey opinion was issued January 20, 1969.

The indictment trial and conviction of the defendant was prior to the decision in the Hooey case.

June 19, 1968, defendant was arraigned upon the charge contained in the indictment, and by his privately retained counsel entered a plea of not guilty, the case was then set for trial on September 18, 1968.

On September 18, 1968, the case was reset for October 29, 1968, and appearance bond fixed.

On October 29, 1968, on application of defendant the case was reset for October 30, 1968.

On October 30, 1968, on application of defendant the case was reset for November 8, 1968.

On November 8, 1968, on application of defendant the case was reset for November 15, 1968.

On November 15, and November 22, 1968, the case was reset for purpose of transferring to another division, and motion to quash indictment reset, for November 22, 1968. (No objection noted.)

On November 27, 1968, motion to quash was heard and State's motion to strike the motion to quash indictment was sustained and case set for trial January 13, 1969.

On January 13, 1969, case tried, jury verdict guilty of robbery as charged in the indictment and punishment fixed at not more than ten (10) years in the penitentiary.

Chapter 270 Public Acts of 1967 amended T.C.A. § 40-1023 which provided procedure for the return to this state for trial of persons charged with crime in Tennessee who may have also been charged or convicted in another state or territory, became effective September 1, 1967.

The defendant was released from custody of Illinois authorities June 3, 1968. So that a period of about nine months elapsed during which the provisions of T.C.A. § 40-1023 were available to the prosecution for the return of the defendant, but this was prior to the decision in the Hooey case and at that time the rule pronounced in the opinion in Burton v. State, 214 Tenn. 9, 377 S.W.2d 900 was in effect as follows:—

"(1, 2) The first two assignments of error complain of the action of the Trial Court in holding defendants' constitutional right to a speedy trial was not violated. From what has been stated above, it is apparent that from a few days following the burglary of the Anderson Super Market until September 1, 1962 the defendants were either confined in a penal institution in Indiana or were on bail pending their appeal from a conviction in Indiana, or were fugitives from the Indiana authorities. Tennessee had no absolute right to extradite defendants under such circumstances. The executive power of the asylum state has the right to determine whether or not a person charged with a crime in that state as well as in another state shall be held in the asylum state until he has completed serving his sentence there. State ex rel. Brown v. Grosch, 177 Tenn. 619, 152 S.W.2d 239."

At that time the rule in Arrowsmith v. State, 131

Tenn. 480, 175 S.W. 545, also was in effect as follows:

"A 'speedy trial,' so guaranteed, means a trial as soon after indictment as the prosecution can, with reasonable diligence, prepare for it, without needless, vexatious or oppressive delay, having in view, however, its regulation and conduct by fixed rules of law, any delay created by the operation of which rules does not in legal contemplation work prejudice to the constitutional right of the accused."

If the delay, in taking steps to bring defendant to trial, between September 1, 1967, and June 3, 1968, can be imputed to the State, the delay between 1960 and 1967 can be imputed to the defendant under the law as it existed at that time. The defendant was serving sentences for convictions of felonies in Illinois from 1960 to June 3, 1968.

There is no showing that the defendant was prejudiced by failure of the state to make a demand for returning him to Tennessee for trial during the period between September 1, 1967, and June 3, 1968. The alibi witnesses whose testimony the defendant says he wanted were killed in a bus wreck in 1965.

After the defendant's return to Tennessee much of the delay in continuances and resetting of the case was on his application in at least three instances.

We think the delay in bringing the defendant to trial was caused by his own acts, commission and imprisonment for crimes, and that such delay did not entitle him to discharge from the indictment. Burton v. State, supra.

There was no error in the trial courts' failure to quash the indictment.

The assignments of error are overruled and the judgment is affirmed.

We commend appointed counsel for excellent service on this appeal.

RUSSELL and HYDER, JJ., concur.